UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RAMON GUILLERMO MATUTE
RODRIGUEZ,

   Plaintiff,

  v.
            Case No. 2:26-cv-85-KCD-NPM

WARDEN DAVID HARDEN,
GLADES COUNTY DETENTION
CENTER; INTERIM DIRECTOR
JUAN AGUDELO, MIAMI FIELD
OFFICE U.S. IMMIGRATIONS
AND CUSTOMS ENFORCEMENT;
SECRETARY KRISTI NOEM, U.S.
DEPARTMENT OF HOMELAND
SECURITY; AND PAMELA JO
BONDI, ATTORNEY GENERAL
OF THE UNITED STATES,

   Defendants,
_____/

## ORDER

  Petitioner Ramon Guillermo Matute Rodriguez is a non-citizen currently detained by immigration authorities. He has filed a habeas corpus petition (Doc. 1) and an accompanying motion for temporary restraining order (Doc. 4).[1] The latter seeks to enjoin the Government from "transferring [him] outside the jurisdiction of the Middle District of Florida during the pendency of this action." (Doc. 4 at 5.) Rodriguez argues that, without this

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

pause button, he "could be deported or removed from this Court's jurisdiction, effectively foreclosing any recourse." (*Id.* at 4.)

Rodriguez's concerns are logical. But federal courts operate within strict boundaries set by Congress. And when it comes to stopping the Government from executing a removal order, those boundaries are high walls that we cannot scale. What is more, Rodriguez's fear that moving him physically will strip this Court of jurisdiction is unfounded. Because the relief Rodriguez seeks is either unobtainable or unnecessary, his emergency motion falls short.

## I. Background

Rodriguez is a citizen of Honduras who entered the United States in 2004. His current legal troubles began on December 10, 2025, when ICE officers arrested him during a traffic stop. Since that day, he has remained in custody. (Doc. 1 at 1-2.)

The central conflict here is not about whether Rodriguez can be deported, but about whether he can be released on bond while those proceedings play out. Shortly after his arrest, Rodriguez sought a bond hearing. An immigration judge said no, reasoning that under a binding Board of Immigration Appeals decision (*Matter of Yajure Hurtado*) the court lacked jurisdiction to even consider releasing him. In the immigration court's view, Rodriguez was subject to mandatory detention. (*Id.* at 2.)

2

Rodriguez argues that this legal reasoning is dead wrong, and he points to a recent federal class action to prove it: *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). The court in *Bautista* issued a declaratory judgment holding that individuals who entered the United States without inspection but have remained in the country are entitled to bond hearings. *Id.* Rodriguez asserts he is a member of this "Bond Eligible Class." (Doc. 1 at 3.)

Rodriguez's habeas petition asks this Court to enforce the *Bautista* judgment and order a bond hearing. But fearing that ICE might transfer him to a different state before this Court can act—thereby complicating his ability to get relief—he also seeks emergency relief to freeze his location. (Doc. 4.)

## II. Standard of Review

To obtain a temporary restraining order (TRO), the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these

3

prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016).

### III. Discussion

Rodriguez's habeas petition raises substantive arguments that are not easily dismissed. But having a good argument on the merits is not alone enough for a TRO—you must also seek a remedy the Court can give. *See, e.g.*, *Sekona v. Perez*, No. 1:19-CV-00400-JLT-HBK, 2025 WL 2140093, at *2 (E.D. Cal. July 29, 2025) ("The injunctive relief an applicant requests must relate to the claims brought in the complaint."). The fundamental stumbling block here is the relief Rodriguez requests.

Rodriguez asks the Court to prohibit his transfer to any other location in the United States. (Doc. 4 at 6.) He asserts that relocation would "effectively foreclos[e] any recourse." *Id.* The Court cannot agree. "[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian." *Villa v. Normand*, No. 5:25-CV-89, 2025 WL 3113200, at *4 (S.D. Ga. Oct. 16, 2025). So an order enjoining Rodriguez's transfer is superfluous. We do not issue injunctions to prevent harms that legally cannot happen. *Cf. Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985); *Major v. Warden, FCC Coleman*

- *Low*, No. 5:18-CV-269-OC-02PRL, 2019 WL 4194673, at *1 (M.D. Fla. Sept. 4, 2019).

Although not entirely clear, Rodriguez also seems to contemplate an order prohibiting his removal from the United States. (Doc. 4 at 6.) The answer is similarly no. The Immigration and Nationality Act contains a jurisdiction-stripping provision that is as clear as it is potent. It states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

This provision is designed to protect the Government's discretion in three specific areas: commencing proceedings, adjudicating cases, and—crucially for Rodriguez—executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). When a claimant seeks an injunction to stay his removal, he is asking the court to do exactly what the statute forbids: interfere with the Government's decision to execute a removal order. *See Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1271 (11th Cir. 2021).

Staying Rodriguez's removal would be to forbid the executive from doing what § 1252(g) says we cannot interfere with. "Courts across the country have thus found that they are barred from staying removal, even

when the court might otherwise have jurisdiction over the [underlying] claims presented." *Edwin M.-N. v. Green*, No. CV 19-6096 (KM), 2019 WL 13299141, at *2 (D.N.J. Feb. 19, 2019); *see also Rivera-Amador v. Rhoden*, No. 3:25-CV-1460-WWB-SJH, 2025 WL 3687452, at *3 (M.D. Fla. Dec. 19, 2025); *Lopez v. Warden, Stewart Det. Ctr.*, No. 4:18-CV-134-CDL-MSH, 2018 WL 7051097, at *2 (M.D. Ga. Dec. 26, 2018). Because § 1252(g) removes this Court's power to act, Rodriguez's request to enjoin removal from the United States must be denied. *See, e.g., Torres-Mejia v. Trump*, No. 1:25-CV-1623, 2025 WL 3684258, at *9 (W.D. Mich. Dec. 19, 2025) ("Because a general request for a stay of removal would concern a decision or action by the Attorney General to . . . execute removal orders, the Court finds that § 1252(g) precludes [its] jurisdiction over such claims.").

## IV. Conclusion

While the Court takes Rodriguez's underlying claims seriously, the specific stopgap measures he requests are either beyond our reach or beside the point. Accordingly, his Motion for Temporary Restraining Order (Doc. 4) is **DENIED**, and the case will proceed to a review of the merits of the habeas petition.

**ORDERED** in Fort Myers, Florida on January 27, 2026.

Kyle C. Dudek
United States District Judge

6